IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PAUL R. HEISE,

       Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.

HON. JEROME B. SIMANDLE

Civil No. 09-5455 (JBS)

**OPINION**

APPEARANCES:

Jason L. Thompson, Esq.
LEVENTHAL, SUTTON & GORNSTEIN, ESQS.
Horizon Corporate Center
3600 Horizon Boulevard
Suite 150
Trevoise, PA 19053
    Attorneys for Plaintiff

Karen T. Callahan
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review
the final decision of the Commissioner of the Social Security
Administration denying Plaintiff Paul R. Heise's request for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  The Court must determine whether the Administrative Law Judge ("ALJ"), who denied Plaintiff's request, improperly failed to assign significant weight to the opinions of Plaintiff's treating physicians.  The Court must also determine whether the ALJ incorrectly concluded that Plaintiff was capable of performing other substantial gainful activity in the national economy, despite his impairments.  For the reasons discussed herein, the Court will remand the case to the Commissioner of Social Security to reconsider Plaintiff's request for Disability Insurance Benefits.

I.   **BACKGROUND**

     **A.   Procedural Background**

     Plaintiff Paul R. Heise filed an application for Disability Insurance Benefits under Title II of the Social Security Act on June 27, 2006.  (R. at 93-95.)  The application was denied on September 29, 2006.  (R. at 66-68.)  Plaintiff then filed a timely request for reconsideration on October 14, 2006, (R. at 71), which was also denied in a notice dated April 11, 2007, (R. at 72-74).

     Plaintiff subsequently requested a hearing before an ALJ on May 31, 2007.  (R. at 71, 75.)  The hearing was held on October 27, 2008, before ALJ Mark G. Barrett.  (R. at 23-61.)  On March

2

3, 2009, the ALJ issued a final decision, finding that Plaintiff was not disabled under the Social Security Act and was therefore not entitled to disability benefits.  (R. 11-22.)  The Appeals Council affirmed this decision on August 27, 2009, by denying Plaintiff's request for review.  (R. at 1-5.)  Plaintiff timely filed the instant complaint on October 26, 2009, asking the Court to reverse the final judgment of Commissioner of Social Security, or alternatively remand the case to reconsider Plaintiff's request.  [Docket Item 1.]  Briefing was completed on July 1, 2010, and the case is ripe for adjudication.

**B.   ALJ Opinion**

After reviewing the applicable law, the ALJ first determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2003.  (R. at 16.)  The ALJ then proceeded through the regulatory five-step analysis for determining whether an individual is "disabled" or "not disabled," as defined by the Act and to be discussed in Part II.B, below.

In step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the time period from his amended alleged onset date of May 9, 2001, through his date last insured.  (R. at 16.)  In step two, the ALJ concluded that Plaintiff had two severe impairments, lumbar disc disease and

osteoarthritis of the knees, both of which caused significant work-related limitations, but that neither met the 12-month durational requirement.  (R. at 17.)  In step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. §§ 404.1525-26.  (R. at 17.)

In steps four and five, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work, but that he nonetheless "had the residual functional capacity to lift and/or carry 10 pounds and to stand and/or walk for 2 hours and sit for 6 hours in an 8-hour workday," alternating positions during regularly scheduled breaks and meals.  (R. at 17.)  The ALJ's step five determination was largely based on Plaintiff's testimony that he rode to Florida in a motor home on two occasions since the alleged onset date; was capable of performing basic household activities such as cleaning, laundry, cooking, and collecting rent; had no difficulty dressing, bathing, or otherwise completing self-care tasks; and was able to drive, shop, pay bills, and manage a savings account.  (R. at 20.)  The ALJ found this level of daily activity to be wholly consistent with an ability to perform a full range of sedentary work. (R. at 20.)

The ALJ also explained in his step five analysis that while

4

the medical opinions of Dr. Simon and Dr. Dubowitch would normally be afforded significant weight, they were, in this case, only entitled to "little weight." (R. at 21.) He reasoned that the opinions were "not relevant to the time period at issue" because they were rendered approximately five years after the Plaintiff's date last insured. (R. at 21.) The ALJ also noted that the "weight of the evidence establishes at least some deterioration of claimant's condition." (R. at 20.)

Based on Plaintiff's determined RFC, age, education, and work experience, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could have performed, (R. at 21), and ultimately concluded that Plaintiff was not under a disability, as defined by the Social Security Act, at any time before December 31, 2003. The ALJ therefore denied Plaintiff's application for Disability Insurance Benefits. (R. at 22.)

### C.   Evidence in the Record

#### 1.   Medical Records and Opinion from Dr. Simon

Dr. Richard M. Simon is a general physician with Wolfe-Simon Medical Associates. He first treated Plaintiff in 1999 for severe pain in his right shoulder. (R. at 323.) Dr. Simon's fellow physician, Dr. Warren Wolfe, has been treating Plaintiff since 1966, when Plaintiff was approximately five years old. (R.

at 323.)

Although portions of the medical records supplied by Wolfe-Simon Medical Associates are illegible, they do indicate that Plaintiff began complaining of shoulder and back pain in 2000. (R. at 364, 366.)  The following year, in his March, May, June, July, November, and December visits, Plaintiff again reported that he was experiencing back pain.  (R. at 363-364.)  In December of 2002, Plaintiff reported pain in his shoulders, but in February of 2003 noted that his joint pain was feeling better. (R. at 361.)

By letter dated May 30, 2001, Dr. David H. Kramer of South Jersey Radiology Associates wrote to Dr. Wolfe concerning a CT Scan of Plaintiff's lumbar spine, performed on May 29, 2001.  (R. at 368.)  The letter informed Dr. Wolfe that Plaintiff had a concentric annular bulge at L3-4 and a shallow annular bulge at L4-5.  (R. at 368.)

On January 15, 2002, Dr. Wolfe wrote a letter to Charles J. Block, Esq., briefly summarizing Plaintiff's history of shoulder and back pain.  (R. at 323.)  Dr. Wolfe treated Plaintiff in September, 2000 for worsening chronic lower back pain and suggested orthopedic consultation.  (R. at 323).  Plaintiff did well until May, 2001, at which time he complained that his back pain was severe and worse than ever.  (R. at 323.)  Dr. Wolfe

ordered a CT Scan of the lumbar spine, discussed above.  The results showed bulging at L3-4 and L4-5, which Dr. Wolfe believed to be the source of his pain.  Due to the increasing severity of the pain, Dr. Wolfe asked Plaintiff to obtain an MRI.  (R. at 323.)

Dr. Simon issued a clinical assessment of Plaintiff's pain on October 14, 2008.  (R. at 357-358.)  It addresses Plaintiff's condition "on and before December 31, 2003."  The assessment is summarized as follows:

(1)   Plaintiff's pain is present to such as extent as to be distracting to adequate performance of daily activities or work;

(2)   Physical activity, such as walking, standing, bending, stooping, and moving of extremities, is likely to greatly increase Plaintiff's pain, and to such a degree as to cause distraction from a task or even total abandonment of a task;

(3)   Medications prescribed to Plaintiff, or medications typically prescribed in cases like this one, can be expected to cause significant side effects, limiting the effectiveness of work duties or the performance of everyday tasks such as driving an automobile;

(4)   Pain or drug side effects can be expected to be severe

and to limit effectiveness due to distraction,
inattentiveness and drowsiness;

(5)   Although the level of pain may be less intense or less
frequent in the future, it will still remain a
significant element in Plaintiff's life; and

(6)   Treatments of this kind have had no appreciable impact
or have only briefly altered the level of pain that
this patient experiences.

(R. at 357.)

2.   Medical Records and Opinion from Dr. Dubowitch

Dr. Stuart G. Dubowitch is an orthopedist with Regional
Orthopedic Professional Association.  He first treated Plaintiff
prior to 2001, when he performed arthroscopic surgery on
Plaintiff's right knee.  (R. at 321.)  In 2002, Dr. Dubowitch
evaluated Plaintiff for bilateral knee pain, and informed Dr.
Wolfe that Plaintiff's pain had progressed over the past months
and continued to worsen.  (R. at 321.)  Dr. Dubowitch treated
Plaintiff again from July through September of 2008.  (R. at 346-
352.)  After comparing Plaintiff's 2001 CT scan with a lumbar MRI
performed in August, 2008, Dr. Dubowitch determined that there
had been no change in condition or worsening of the disc in
Plaintiff's lower back area.  (R. at 348.)

Dr. Dubowitch issued a medical opinion form, pertaining to

8

Plaintiff's ability to do physical work-related activities, on
October 8, 2008.  (R. at 353-355.)  It addresses Plaintiff's
condition "on and before December 31, 2003."  The opinion is
summarized as follows:

(1)  Plaintiff's maximum ability to lift and carry on an
occasional basis (no more than 1/3 of an 8-hour day) is
10 pounds;

(2)  Plaintiff's maximum ability to lift and carry on a
frequent basis (1/3 to 2/3 of an 8-hour day) is 10
pounds;

(3)  Plaintiff's maximum ability to stand and walk (with
normal breaks) during an 8-hour day is less than 2
hours;

(4)  Plaintiff's maximum ability to sit (with normal breaks)
during an 8-hour day is less than 2 hours;

(5)  Plaintiff must periodically alternate sitting, standing
or walking every 30 minutes to relieve discomfort;

(6)  Plaintiff can stand 30 minutes before needing to change
position; and

(7)  Plaintiff needs the opportunity to shift at will from
sitting, standing, or walking.

(R. at 353-54.)  Dr. Dubowitch based his opinion on x-rays, MRIs,
and a physical exam.  (R. at 354.)  He also anticipated that, on

9

average, Plaintiff's impairments would cause him to be absent from work more than three times a month.  (R. at 355.)

### 3.  Plaintiff's Testimony

In a review hearing on October 27, 2008, Plaintiff testified that he worked for many years as a carpenter.  (R. at 29.)  The occupation required extensive lifting of tools, equipment, and sometimes sheet rock.  (R. at 35-36.)  In 1998, Plaintiff stopped working as a result of severe pain in his knees, back, neck, and shoulders, which was later diagnosed as arthritis.  (R. at 37.) The following year, Plaintiff tore his rotator cuffs in both shoulders, and had an x-ray performed on the right shoulder because it was more problematic.  (R. at 47.)

Prior to 2001, Plaintiff had undergone surgery for his right knee, and testified that his left knee was similarly in poor condition around that time.  (R. at 37.)  Then, in 2001, Plaintiff underwent surgery on his left wrist after cutting himself in an attempt to deflect a large falling light fixture. (R. at 58, 59.)  He now has limited dexterity in his left hand, and suffers from numbness and tingling which sometimes escalates to a burning sensation when aggravated.  (R. 46, 51.)  After reaching a "very bad stage" that year, Plaintiff's condition remained the same despite the fact he was no longer working.  (R. at 37-38.)

From 2001-2003, and again in 2007 and 2008, Plaintiff attended physical therapy sessions for his knees, back, and shoulders.  (R. at 51.)  His doctor had recommended epidural injections to relieve the pain in his back and neck, but Plaintiff had refrained due to fear.  (R. at 52.)

Since 2001, Plaintiff has traveled to Florida on three occasions – once by plane, and twice by motor home.  (R. at 56l.) He testified that he specifically purchased the motor home to "get out on the road and be able to have somebody else driving" so that he could move about the vehicle.  (R. at 56.)

Although not prescribed, Plaintiff uses a scooter at home in order to improve his mobility.  (R. at 46.)  He can walk or stand for about ten minutes, which his doctor encourages, and can sit for a half hour to 45 minutes before needing to shift his position.  (R. at 47-48.)  If Plaintiff does move his back incorrectly ("throws his back out"), he experiences very limited mobility the following week.  (R. at 49.)  In regard to his daily activities, Plaintiff testified that he does light shopping for his family, and can lift a maximum of 15-20 pounds at a time. (R. at 49.)  At the time of the hearing, Plaintiff was taking multiple prescription medications, including Percocet, Prednisone, and ibuprofen.  The side effects included grogginess and lack of coherence.  (R. at 50.)

## II.   DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Social Security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Halter, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  It means, rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The applicable inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

Some types of evidence will not be considered "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence.

> Nor is evidence substantial if it is overwhelmed by other
> evidence – particularly certain types of evidence (e.g.
> that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153
(3d Cir. 1983) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d
Cir. 1983)).

A reviewing court has a duty to review the evidence in its
totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).
"[A] court must 'take into account whatever in the record fairly
detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp.
277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health
& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting
Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  The
ALJ, however, "must adequately explain in the record his reasons
for rejecting or discrediting competent evidence." Ogden v.
Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v.
Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has
held that an "ALJ must review all pertinent medical evidence and
explain his conciliations and rejections." Burnett v. Comm'r of
Soc. Sec. Admin., 200 F.3d 112, 122 (3d Cir. 2000).  Similarly,
an ALJ must also consider and weigh all of the non-medical
evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d
871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d

Cir. 1981).

The Third Circuit has emphasized that access to the Commissioner's reasoning is essential for meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182.  An ALJ need not, however, explicitly discuss every piece of relevant evidence in his decision.  See Fargnoli, 247 F.3d at 42.

Apart from the substantial evidence inquiry, a reviewing court is also entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

14

**B.    Disability Defined**

The Social Security Act defines "disability," for purposes of an individual's entitlement to Social Security benefits, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a claimant qualifies as disabled,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Substantial gainful activity is "work that – (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) to pay or profit."  20 C.F.R. § 404.1510.  This definition presupposes a regular, continuing, and sustained ability to perform such work.  Kangas v. Bowen, 823 F.2d 775, 778 (3d Cir. 1987).

The Commissioner has promulgated regulations that determine disability by application of a five-step sequential analysis

codified in 20 C.F.R. § 404.1520.  The Commissioner evaluates each case, step-by-step, until a finding of "disabled" or "not disabled" is obtained.  20 C.F.R. § 404.1520(a).  This evaluation is summarized as follows:

(1)   If the claimant currently is engaged in substantial gainful employment, the claimant is "not disabled."

(2)   If the claimant does not suffer from "severe impairment," the claimant is "not disabled."

(3)   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant is "disabled."

(4)   If the claimant can still perform work the claimant has done in the past ("past relevant work"), despite the severe impairment, the claimant is "not disabled."

(5)   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy.  If the claimant is incapable, a finding of disability will be entered.  On the other hand, if the claimant can perform other work, the claimant will be found to be "not disabled."

See 20 C.F.R. § 404.1520(b)-(f).

This analysis involves a shifting burden of proof.  Wallace, 722 F.2d at 1153.  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available

for the claimant:  "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas, 823 F.2d at 777.

In addition to establishing disability, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c) to be eligible for benefits.  Where claimant's insured status expired before he applied for Disability Insurance Benefits, the claimant must "demonstrate, therefore, that on or before that date he was prevented from performing any substantial, gainful activity by reason of medically determinable impairment which continued to the time he filed his application."  De Nafo v. Finch, 436 F.2d 737, 739 (3d Cir. 1971).  In the present case, it is undisputed that Plaintiff's date last insured was December 31, 2003.  He must therefore establish disability before that date.

**C.   Analysis**

1.   Whether the ALJ Improperly Assigned Little Weight to the Medical Assessments of Treating Physicians Dr. Dubowitch and Dr. Simon

Plaintiff first argues that the ALJ improperly assigned little weight to the medical opinions of his treating physicians, Dr. Dubowitch and Dr. Simon, on the grounds that the opinions were issued five years after the date last insured.  The Court agrees with Plaintiff, and finds that the ALJ erred in failing to

assign Dr. Dubowitch's and Dr. Simon's opinions significant, if not controlling, weight.

a.   "Treating Physician Rule"

Although an ALJ must examine all evidence of the record, treating physicians have an important perspective on a claimant's impairments.  The Commissioner recognizes:

> Generally, [the Social Security Administration] give[s] more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2).  This provision is often referred to as the "treating physician rule."

When the Commissioner does not give the treating physician's opinion controlling weight, he must apply the factors enumerated in the regulations to determine the proper weight.  <u>Id.</u>  These factors include the length of treatment relationship, frequency of examination, and the nature and extent of the treatment relationship.  <u>Id.</u> at §§ 404.1527(d)(2)(I)-(ii).

18

The Third Circuit has recognized the treating physician rule as a "cardinal principle" guiding disability determinations.  Morales v. Apfel, 225 F.3d 310, 317-319 (3d Cir. 2000).  Accordingly, "the ALJ must . . . pay close attention to the medical findings of a treating physician." Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986).  An ALJ may reject a treating physician's medical assessment outright only on the grounds that contrary medical evidence exists, and not for no reason or the wrong reason.  Plummer v. Apfel, 186 F.3d 422, 429 (1999).  Credibility judgments, speculations, or lay opinions are not permissible reasons for rejecting a treating physician's medical opinion.  Morales, 225 F.3d at 318.  The regulations further require that an ALJ provide sufficient reasons in its notice of determination or decision for the weight he gives a treating source's opinion. 20 C.F.R. § 404.1527(d)(2).

> b.  ALJ's Failure to Assign Controlling or Significant Weight

The ALJ assigned neither controlling weight nor significant weight to the medical opinions of Dr. Dubowitch and Dr. Simon, Plaintiff's treating physicians.  Rather, the ALJ assigned the opinions "little weight," reasoning that the opinions were not relevant to the time period at issue

because they were rendered five years after the date last insured, and because "the weight of the evidence establishes at least some deterioration of the claimant's condition during that time period."  (R. at 20.)   The ALJ makes no attempt to reconcile his decision with the fact that each medical opinion expressly addressed Plaintiff's condition "on and before December 31, 2003," the date last insured.

A treating physician's opinion's retrospective nature is not a proper reason for failing to assign it the significant weight to which it is normally entitled.  See 20 C.F.R. §§ 404.1527(d)(2)(I)-(ii) (listing the relevant factors to consider when determining the proper weight to afford a treating physician's medical opinion).  To the contrary, both the Social Security regulations and the Third Circuit recognize that retrospective opinions are often necessary in a disability determination involving slowly progressing impairments, as the ALJ acknowledged is the case here.  SSR 83-20; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547-48 (3d Cir. 2003).  For example, Social Security Rule 83-20, which provides ALJs with an "analytical framework for determining a disability onset date," requires that an ALJ consult with a medical advisor before rejecting a retrospective opinion of a treating physician.  Id. at 548.

Likewise, the Third Circuit has found that a "[r]etrospective
diagnosis of an impairment, even if uncorroborated by
contemporaneous medical records . . . can support a finding
of past impairment."  Id. at 547; see also Perez v. Chater,
77 F.3d 41, 48 (2d Cir. 1996) ("A treating physician's
retrospective medical assessment of a patient may be
probative when based upon clinically acceptable diagnostic
techniques.").[1]

     Based on the provisions of the treating physician rule,
coupled with the validity of retrospective opinions, the
ALJ's decision to assign Dr. Dubowitch's and Dr. Simon's
medical assessments little weight was clearly improper.
First, the ALJ took no issue with Dr. Dubowitch's and Dr.
Simon's qualifications as treating physicians.  He admitted
that as such, their opinions would normally be entitled to
significant weight.  Second, both doctors expressly issued
their opinions in regard to Plaintiff's condition on and

_____

[1] The record is not entirely clear as to the progression of
Plaintiff's impairments.  Although Dr. Dubowitch noted that the
condition of the disc in Plaintiff's lower back had not changed
from 2001 to 2008, (R. at 348), the ALJ found that the weight of
the evidence suggested at least some deterioration in Plaintiff's
condition, (R. at 20).  The ALJ's statement, unlike Dr.
Dubowitch's, was not specific to Plaintiff's lower back area.  It
may be necessary for the Commissioner, on remand, to determine
the progression of Plaintiff's impairments when determining the
onset date of Plaintiff's disability, if any.

before December 31, 2003, the relevant time period.  Dr. Dubowitch supported his opinion with medically acceptable techniques, including x-rays, MRIs, and a physical exam. (Dr. Simon's assessment was a clinical evaluation of Plaintiff's pain.)  Third, Plaintiff has a significant medical relationship with both doctors.  Dr. Dubowitch performed surgery on Plaintiff's right knee prior to 2001, and treated him again in 2002 and 2008 for pain in both his knees.  Dr. Simon, both personally and through his associate, Dr. Wolfe, has an especially extensive treatment history with Plaintiff.  Dr. Wolfe began treating Plaintiff in 1966, and first noted Plaintiff's back pain in 2000.  Dr. Simon then began treating Plaintiff in 1999 for shoulder pain.  In the year 2001 alone, Plaintiff had at least six visits to Wolfe-Simon Medical Associates for his back problems.  Fourth, and most importantly, no medical evidence exists in the record to contradict Dr. Dubowitch's and Dr. Simon's opinions.

The record provided no legitimate justification for failing to assign Dr. Dubowitch's and Dr. Simon's opinions significant, if not controlling, weight.  Because of both the quantity and quality Dr. Dubowitch's and Dr. Simon's medical records, and because both doctors were Plaintiff's treating physicians, the ALJ erred in his decision to assign them only

"little" weight on the grounds that the opinions were
rendered after the date last insured.

> 2. <u>Whether the ALJ Improperly Determined Plaintiff's
> Residual Functional Capacity</u>

Plaintiff next claims that the ALJ improperly determined his
RFC at step five, and that this determination was not based on
substantial evidence.  More specifically, Plaintiff takes issue
with the ALJ's finding that Plaintiff had the ability to sit for
six hours in an eight hour workday and consequently could perform
a full range of sedentary work.  The Court, for the reasons
explained below, agrees with Plaintiff and concludes that the
ALJ's RFC determination is not supported by substantial evidence.

> a.   RFC Evaluation Process

The sequential evaluation process for determining an
individual's disability status requires an assessment of the
claimant's functional limitations and the maximum remaining
ability to do sustained work activities in an ordinary work
setting on a regular and continuing basis.  <u>See</u> SSR 96-8P.
This is referred to as the claimant's residual functional
capacity ("RFC").  <u>Id.</u>

The RFC determination is a function-by-function assessment,
which entails an evaluation of a claimant's physical and mental
abilities, any other abilities affected by the impairments, and

how limitations on those abilities may affect the claimant's ability to do work.  20 C.F.R. §§ 416.945(b)-(d), 404.1545(b)-(d).  The ALJ's findings of RFC must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." Cotter, 642 F.2d at 704.  The claimant's RFC is then used in steps four and five of the sequential evaluation process to determine whether the claimant is able to do past relevant work or other work existing in the national economy.  20 C.F.R. §§ 416.945(b)-(d), 404.1545(b)-(d).

b.   ALJ's RFC Determination

Plaintiff's argument that the ALJ improperly determined his RFC rests largely on the ALJ's failure to afford Dr. Dubowitch's and Dr. Simon's medical opinions significant weight.  He contends that this error was "egregious" given that no contrary medical evidence exists in the record, and points out that no physician suggested that he could perform light work.  Plaintiff therefore concludes that the ALJ's RFC determination, and consequently his final decision, is not supported by substantial evidence.  As discussed above, the ALJ did err when he gave little weight to the opinions of Plaintiff's treating physicians.  This error alone would be sufficient to undermine the ALJ's RFC determination, see 20 C.F.R. § 404.1527(d)(2) and Brewster v. Heckler, 786 F.2d at 584, but the Court finds additional errors.

24

The ALJ based his RFC determination, in part, on his conclusion that Plaintiff was able to sit for six out of eight hours a day due to his ability to endure two trips to Florida in his motor home during the years 2006 and 2007.  However, "sporadic and transitory activities" are not permissible factors in determining a claimant's ability to engage in substantial gainful activity.  Fargnoli, 247 F.3d at 40 n.5.  The Third Circuit has specifically qualified irregular travel as the type of sporadic and transitory activity which may not be considered. See id. ("Fargnoli's trip to Europe in 1988 cannot be the basis for a finding that he capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity."); Jesurum v. Sec'y of the United States Dep't of Health and Human Servs., 48 F.3d 114, 119 (3d Cir. 1995) (plaintiff's trip to Rhode Island two years prior to the hearing is the type of sporadic and transitory activity that may not be used in a substantial gainful activity determination).

Accordingly, the ALJ's consideration of Plaintiff's trips to Florida, to the extent that they influenced the ALJ's determination of Plaintiff's ability to engage in substantial gainful activity, was inappropriate.  And, not withstanding this point, Plaintiff testified that he specifically purchased the

motor home in order to be able to stop along the road at his own free will and move about the cabin while allowing someone else to drive.  Assuming his motor home was designed in such a way as to allow him to move about the vehicle while not at the wheel, as motor homes commonly are, Plaintiff's trips to Florida do not support the ALJ's conclusion that Plaintiff retains the ability to sit for six out of eight hours a day.[2]

In its reply brief, Defendant first contends that the ALJ properly determined Plaintiff's RFC by arguing that the medical records received from Plaintiff's physicians are complete.  The Third Circuit has recognized that due process requires that a

---

[2] In his evaluation of Plaintiff's subjective complaints, the ALJ also found that Plaintiff's testimony concerning the time period prior to January 1, 2004, was not entirely credible due to the level of Plaintiff's daily activities.  (R. at 20.)  This finding appears to have influenced the ALJ's determination of Plaintiff's RFC.  The ALJ stated:  "The undersigned finds this level of daily activity totally consistent with an ability to perform the full range of sedentary work," referencing Plaintiff's ability to do light household chores such as cleaning, laundry, and cooking; complete self-care tasks such as dressing and bathing; and drive, shop, pay bills, collect rent, and manage a savings account.  (R. at 20.)  Although an ALJ may consider activities of daily living to attack a Plaintiff's credibility, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), Plaintiff's ability to collect rent, pay bills, and manage a savings account is not evidence of an ability to engage in a full range of sedentary work.  Such activities require very minimal, if any, effort, and may be completed with no more than the stroke of a pen or the click of a button.  These activities normally do not entail a prolonged period of sitting, as a sedentary job would require.  On remand, the Commissioner will have an opportunity to reconsider the significance of Plaintiff's daily activities when reassessing Plaintiff's RFC.

Social Security claimant be afforded a full and fair hearing. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted).  Coexistent with this right is the ALJ's duty to develop a full and fair record by securing relevant information regarding a claimant's entitlement to social security benefits. Id.  Here, however, neither party has taken issue with the sufficiency of the record.  Moreover, Defendant fully admits that Plaintiff has not raised the record's completeness on appeal. The argument fails because it in no way addresses the issue of whether the ALJ properly determined the Plaintiff's RFC.

Second, Defendant maintains that the ALJ's determination was proper because Plaintiff's treating physicians provided minimal clinical findings.  A district court, reviewing an administrative agency's decision on appeal, may only judge the decision based on grounds invoked by the agency.  See SEC v. Chenery Corp., 332 U.S. 194, 196-197 (1947).  If the agency has failed to make a point sufficiently clear or decisive, a court may not "guess at the theory underlying the agency's action."  Id.  In his opinion, the ALJ cited only minimal reasons for affording the treating physicians' opinions little weight, as previously discussed. Although the ALJ may very well have contemplated this point, he made no indication in his opinion that "minimal clinical findings" were taken into consideration when deciding the amount

27

of weight to afford to Dr. Dubowitch's and Dr. Simon's assessments.  The Court may not, therefore, accept Defendant's justifications for the ALJ's actions where such justifications were not cited in the ALJ's opinion.  See Fargnoli, 247 F.3d at 44 n.7 (noting that a district court should not substitute its own analysis for reasoning omitted by the ALJ); Snell v. Apfel, 177 F.3d 128, 134 (1999) (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)) (a court may not accept counsel's post hoc rationalizations for an ALJ's action).

Third, Defendant argues that the ALJ properly determined Plaintiff's RFC because "additional evidence of plaintiff's ability to perform sedentary work for the time period in question [] included evidence that plaintiff continued working as a real estate developer during the relevant time period, grossing more than $30,000 to $40,000 yearly." [Def.'s Reply Br. at 12.]  This statement is a mischaracterization of Plaintiff's testimony, and directly contradicts the findings of the ALJ.  Plaintiff testified that this money was a passive form of income, flowing from property investments made by Plaintiff years ago.  Plaintiff does nothing more than collect rent; he does not advertise, make repairs, or maintain the buildings himself.  Furthermore, the ALJ made clear in his opinion that the receipt of this income did not constitute substantial gainful activity.  Thus, Defendant's

contention that Plaintiff "works as a real estate developer" is not only both false and plainly contradictory to the record, but cannot be accepted as justification for the ALJ's RFC determination, as it was neither cited nor found by the ALJ in his opinion.

The ALJ's determination that Plaintiff is able to sit for six out of eight hours in a workday is not supported by substantial evidence.  The ALJ improperly failed to assign significant weight to Plaintiff's treating physicians' medical opinions, and erred in including Plaintiff's trips to Florida in his analysis.  Although Defendants attempt to justify the ALJ's decisions on additional grounds, the Court may not accept rationalizations that were not cited in the ALJ's opinion. Without substantial evidence to support his conclusion, the Court finds that the ALJ improperly determined Plaintiff's RFC.

## III.  CONCLUSION

For the reasons set forth above, the Court finds that the ALJ improperly failed to assign significant weight to Plaintiff's treating physicians' medical opinions, and that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.  The Court therefore remands the case to the Commissioner for reconsideration of Plaintiff's request for Disability Insurance Benefits under the Social Security Act.  The

accompanying Order will be entered.

**_s/ Jerome B. Simandle_**
JEROME B. SIMANDLE
United States District Judge